UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DYNATRACE LLC,

               Plaintiff,

    v.

JAMES RAMEY, et al.,

               Defendants.

Case No.  16-cv-01777-EMC

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO TRANSFER
VENUE**

Docket No. 24

Plaintiff Dynatrace LLC ("Dynatrace"), a provider of digital performance optimization software, brought this lawsuit against Defendants James Ramey ("Ramey") and DeviceBits LLC ("DeviceBits") for allegedly stealing a Florida customer.  Docket No. 1.  Pending before this Court is Defendants' motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue.  Docket No. 24.

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, as here, the plaintiff bears the burden of showing that the jurisdiction is appropriate.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  Where the defendant bases the motion on written materials rather than an evidentiary hearing, as here, courts only need to inquire into whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).  Although the plaintiff cannot rest on "the bare allegations of its complaint," *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), courts must take uncontroverted allegations in the complaint as true, *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  Disputes between the parties over statements contained in affidavits must be resolved in favor of the plaintiff.  *Id.*

No federal statute governs personal jurisdiction in this case.  Thus, the Court applies the

law of California, the state in which the Court sits.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir.1993).  California's long-arm statute allows courts to exercise personal jurisdiction to the extent permitted by the Due Process Clause of the Constitution.  Cal. Code Civ. P. § 410.10; *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir.1996).  Due process requires that a non-resident defendant have minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  If the defendant has sufficient minimum contacts, "[p]ersonal jurisdiction may be founded on either general jurisdiction or specific jurisdiction." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

This Court has personal jurisdiction over Defendants for the reasons below.

A.      Personal Jurisdiction Over Defendant Ramey

Dynatrace argues that this Court has specific jurisdiction over Ramey.  Docket No. 29 at 11-20.  This Court does not address whether it has general jurisdiction over Ramey because: first, Dynatrace never argued that the Court has general jurisdiction over Ramey, an individual who resides in Florida and works at various times in Ohio, Docket No. 1 (Complaint) at ¶ 6; and, second, the Court finds personal jurisdiction based on specific jurisdiction, rendering it unnecessary to address the general jurisdiction issue.

    1.      Specific Jurisdiction Over Defendant Ramey

The Ninth Circuit has articulated the following three-prong test to determine whether a district court may exercise specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015).  The plaintiff must prove the first two prongs, at which point, "the burden shifts to the defendant to set forth a compelling case that the exercise of

1   jurisdiction would not be reasonable." *Id.* at 1211-12 (quotation omitted).

2               a.       First Prong:  Purposeful Availment

3         For the first prong, the "purposeful availment" analysis is generally used for contract

4   claims.  *Id.* at 1212.  The "purposeful availment" analysis "ensures that a defendant will not be

5   haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the

6   unilateral activity of another party or a third person."  *Burger King*, 471 U.S. at 475 (internal

7   quotation omitted).  Jurisdiction is proper, "where the contacts proximately result from actions by

8   the defendant *himself* that create a 'substantial connection' with the forum State."  *Id.* at 476

9   (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)) (emphasis included in the

10  original).  In evaluating whether the defendant purposefully established minimum contacts with

11  the forum, the Court must consider "prior negotiations and contemplated future consequences,

12  along with the terms of the contract and the parties' actual course of dealing."  *Id.* at 479; *see also*

13  *Longyu Int'l Inc. v. E-Lot Elecs. Recycling Inc.*, 2014 WL 1682811, at *2 (C.D. Cal. Apr. 29,

14  2014) ("[A] court must evaluate four factors to determine whether this prong is met: (1) prior

15  negotiations, (2) contemplated future consequences, (3) the terms of the contract, (4) the parties'

16  actual course of dealing.").

17        Here, in addition to alleging the tort of fraud and intentional interference with contractual

18  relations, Dynatrace brought breach of contract claims.  Docket No. 1 (Complaint).  For the

19  reasons stated below, specific jurisdiction obtains as a result of the alleged breach of contract.

20  Dynatrace alleges that its predecessor, Keynote, offered Ramey the position of Regional Director

21  in the sales department, which Ramey accepted by allegedly signing Keynote's Employee

22  Handbook, Code of Business, and Employee Agreement.  *Id.* at ¶¶ 14-18.  The Handbook

23  obligates employees to "devote their best efforts" to the interests of Keynote and to avoid

24  "involvement with a competitor, supplier or customer, which impairs an employee's ability to

25  exercise good judgment on behalf of Keynote."  *Id.* at ¶ 15.  The Code prohibits conflicts of

26  interest by employees by providing that "[e]mployees should not do business on behalf of Keynote

27  with a customer, supplier or partner in which the employee . . .  has an interest (including

28  employment)" and that "[o]fficers and employees may not engage in outside employment or other

3

**United States District Court**
For the Northern District of California

1   outside activity that interferes with their duties and responsibilities at" Keynote.  *Id.* at ¶ 16.  The

2   Employee Agreement prohibits employees from using Keynote's proprietary information.  *Id.* at ¶

3   17.

4           Dynatrace alleges that Ramey breached these agreements by (1) orchestrating and

5   facilitating the reduction of a customer [hereinafter Customer]'s commitment to purchase $2

6   million worth of deliverables; (2) transferring all or part of Customer's business to DeviceBits, a

7   company Ramey secretly formed and controlled; and (3) acting contrary to Dynatrace's interests

8   by not disclosing and taking steps to mask his true intentions and interests that were in conflict

9   with Dynatrace.  *Id.* at ¶¶ 36, 43, 50.  Consideration of the *Burger King* factors establishes a *prima*

10  *facie* case that Ramey purposefully availed himself of the privilege of conducting business in

11  California.

12          First, Ramey entered into the contracts – Employee Handbook, Business Code of Conduct

13  and Ethics, and Employee Agreement – with Keynote, which is undisputedly headquartered in San

14  Mateo, California.  *Id.* at ¶¶ 5, 13, 15-17.  Although Ramey argues that he does not remember

15  signing these contracts, Docket No. 34 at 4, the Court must resolve the dispute in favor of

16  Dynatrace in determining jurisdiction because this motion is based on the papers, not an

17  evidentiary hearing, *AT & T*, 94 F.3d at 588.

18          Second, Ramey contemplated ongoing employment relationships with companies based in

19  this District.  More than eight years ago, Ramey started working for Mobile Complete, Inc., a

20  company based in this District, in San Mateo, California.  *See* Docket No. 1 (Complaint) at ¶ 13.

21  In 2011, Keynote, which is also based in this District, acquired Mobile Complete and offered

22  Ramey the position of Regional Director in Keynote's sales organization.  *Id.* at ¶ 14.  Ramey

23  accepted the offer, and there is no indication that Ramey's employment was limited in scope or

24  length.  *Id.*  Until Dynatrace completed its merger with Keynote in December 2015, Ramey's

25  employer remained based in this District.

26          Third, Ramey's Employee Agreement provides California law as the governing law.  *Id.* at

27  ¶ 18.  This is significant in light of *Burger King*, where the Supreme Court held that the choice-of-

28  law provision designating Florida law as the governing law, while not dispositive in and of itself,

4

United States District Court
For the Northern District of California

reinforced the defendant's deliberate affiliation with Florida when combined with the twenty-year interdependent relationship he established with Burger King's Miami headquarters. *Burger King*, 471 U.S. at 481-82. As in *Burger King*, the California choice-of-law provision under the Employee Agreement, combined with Ramey's multi-year employment relationship with Dynatrace and its predecessors, reinforces Ramey's affiliation with California.

Fourth, Ramey performed his Employee Agreement with Keynote in California. It is undisputed that, during his employment as a sales manager with Dynatrace and Keynote, Ramey traveled to California for annual company-wide sales meetings for two to three days. Docket No. 1 (Complaint) at ¶ 9; Docket No. 24 (Declaration of James Ramey) at ¶ 8. Dynatrace further alleges that Ramey transacted business with Dynatrace in California for Customer's business, attended meetings at Dynatrace's offices in San Mateo, California, in person, via videoconference, telephone or other electronic or virtual means, and communicated regularly with Dynatrace personnel located in San Mateo, California via telephone, fax, email and mail. Docket No. 1 (Complaint) at ¶ 9.

Most significantly, many of the acts in which Ramey allegedly engaged in breach of his employment agreement with Dynatrace and its predecessors were committed in California. Ramey allegedly coordinated with Dynatrace personnel located in San Mateo to have Customer sign a reduced agreement with Dynatrace around December 30, 2015. Docket No. 1 (Complaint) at ¶ 22; Docket No. 24 (Motion to dismiss) at 5. Moreover, Ramey allegedly engaged Dynatrace employees in San Mateo to help DeviceBits provide tutorial services to Customer in direct competition with Dynatrace. Docket No. 1 (Complaint) at ¶¶ 27-28; Docket No. 30 (Declaration of Rachel Obstler) at ¶ 4. Furthermore, many of the steps Ramey took to steal business from Dynatrace were allegedly taken before Keynote ultimately merged into Dynatrace in December 2015, Docket No. 1 (Complaint) at ¶ 5, *i.e.*, when Ramey was an employee of a California company. Specifically, Dynatrace alleges: around September 3, 2015, Ramey asked Dynatrace to forward a backup of all Customer content, circumventing the usual channels within Dynatrace for such requests, *id.* at ¶ 23; around October 14, 2015, Ramey formed DeviceBits, *id.* at ¶ 24; and, around November 5, 2015, Ramey told Dynatrace that Customer wished to significantly reduce

1    the scope of its earlier commitment to purchase deliverables, *id.* at ¶ 21.

2                    b.      Second Prong:  Relation to Forum

3            For the second prong, the Ninth Circuit relies on a "'but  for' test to determine whether a

4    particular claim arises out of forum-related activities."  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th

5    Cir. 1995).  But for Ramey's forum-related activities described above, including those which

6    constituted the alleged breach of contract, the contract claims in this lawsuit would not have

7    arisen.

8                    c.      Third Prong:  Reasonableness of Jurisdiction

9            Since the first two requirements are met, the burden shifts to Dynatrace to argue that the

10   Court's exercise of jurisdiction does not comport with fair play and substantial justice. In

11   determining whether Dynatrace satisfied its burden, the Court considers the following factors:

12                   (1) the extent of the defendants' purposeful injection into the forum
                     state's affairs; (2) the burden on the defendant of defending in the
13                   forum; (3) the extent of the conflict with the sovereignty of the
                     defendant's state; (4) the forum state's interest in adjudicating the
14                   dispute; (5) the most efficient judicial resolution of the controversy;
                     (6) the importance of the forum to the plaintiff's interest in
15                   convenient and effective relief; and (7) the existence of an
                     alternative forum.
16

17   *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011).

18           First, as discussed above, Ramey purposefully injected himself into California.  *See Roth v.*

19   *Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) (concluding that, because "appellees

20   purposefully availed themselves of the privilege of conducting activities in California, there is no

21   need to analyze this first factor separately").  Second, Ramey fails to demonstrate that litigating in

22   California would be burdensome.  *See WRI West Gate South, L.P. v. Reliace Mediaworks (USA)*

23   *Inc.*, 2015 WL 6856477, at *6 (N.D. Cal. Oct. 9, 2015) (finding exercise of jurisdiction over the

24   defendant to be not unreasonable where defendant "failed to present any specific allegations as to

25   the unreasonableness of litigation proceeding in this district").  Third, there is no indication that

26   litigating here in California would conflict with the sovereignty of any other states, especially

27   since the parties have chosen to be governed by California law, Docket No. 1 (Complaint ) at ¶ 18

28   ("The Employee Agreement . . . provides that '[t]his Agreement will be governed by and

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

construed in accordance with the laws of the State of California . . . .'").  Fourth, California has a discernible interest in adjudicating this dispute.  Dynatrace's predecessor, Keynote, was headquartered in San Mateo, in this District, and Dynatrace maintains an office with employees here, who may be key witnesses to this dispute.  *See* Docket No. 1 (Complaint) at ¶¶ 5, 13, 14. This forum has substantial interest in adjudicating disputes involving such companies operating in this District as Dynatrace and Keynote.  Fifth, the Court is not persuaded by Ramey's argument that "[i]t would be more efficient to adjudicate this dispute in the Southern District of Ohio, where DeviceBits' headquarters is located and where key events" (i.e. persuading Customer to go with DeviceBits) occurred, Docket No. 24 (Motion to dismiss) at 16.  In evaluating the most efficient judicial resolution of the controversy, courts have "looked primarily at where the witnesses and the evidence are likely to be located."  *Core-Vent Corp.*, 11 F.3d at 1489; *Legal Additions LLC v. Kowalski*, 2009 WL 1226957, at *8 (N.D. Cal. Apr. 30, 2009).  Evidence and witnesses relevant to this dispute are located in this District as well as in Ohio.  *See* Docket No. 30 (Declaration of Rachel Obstler) at ¶ 5.  Moreover, Dynatrace's records and witnesses are available only outside of Ohio.  *Id.*  Where evidence and witnesses are located in both the forum state and another state, neither state has "a clear efficiency advantage."  *Menken v. Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007).

Thus, Ramey has failed to present a compelling case that the Court's exercise of jurisdiction would be unreasonable under the circumstances.

B.     Personal Jurisdiction Over Defendant DeviceBits

Dynatrace argues that this Court has general jurisdiction over DeviceBits because DeviceBits's own documents show that it is at home in this District; and that this Court has specific jurisdiction over DeviceBits because it purposefully directed its activities at this forum through Ramey.  Docket No. 29 at 20-21.  The Court finds personal jurisdiction based on both grounds.

1.     General Jurisdiction Over Defendant DeviceBits

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so

7

United States District Court
For the Northern District of California

1    'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*

2    *Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see Daimler AG v. Bauman*,

3    134 S. Ct. 746, 749 (2014) (holding that general jurisdiction is "exercisable when a foreign

4    corporation's 'continuous corporate operations within a state [are] so substantial and of such a

5    nature as to justify suit against it on causes of action arising from dealings entirely distinct from

6    those activities'" (quoting *Int'l Shoe*, 326 U.S. at 318)).  However, subjecting a corporation to

7    jurisdiction "in every State in which [it] 'engages in a substantial, continuous, and systematic

8    course of business'" is "unacceptably grasping." *Id*. at 761.  Unless the facts present "an

9    exceptional case," a corporation typically is "at home" only in the state where it is incorporated or

10   has its principal place of business. *Id*. at n.19.

11        Here, Dynatrace made a prima facie showing that DeviceBits's affiliation with this District

12   was so continuous and systematic as to render this District DeviceBits's principal place of

13   business.  First, Dynatrace alleges and provides evidence that, before Dynatrace filed this lawsuit,

14   DeviceBits's website listed only Montara, California, as its location. *See* Docket No. 29, RJN, Ex.

15   A.  Montara is in this District.  Second, DeviceBits's marketing materials state that DeviceBits has

16   "Dual Headquarters in San Mateo, CA and Columbus, Ohio with Region Offices in Raleigh and

17   Chicago."  Docket No. 32, Exs B, C.  Third, DeviceBits is registered to do business in this

18   District, and the registration application shows that DeviceBits CEO resides here and serves as

19   DeviceBits's registered agent for service. *See* Docket No. 29, RJN, Ex. F.  Lastly, Dynatrace

20   argues and DeviceBits fails to specifically refute that DeviceBits "regularly transacts and conducts

21   business within the Northern District of California."  Docket No. 1 (Complaint) at ¶ 10.  The

22   record evidence strongly suggests DeviceBits's principal place of business is in this District.

23        2.    Specific Jurisdiction Over Defendant DeviceBits

24        Even if there is no general jurisdiction, there is specific jurisdiction over DeviceBits.  In

25   this regard, Dynatrace imputes Ramey's conduct and contacts giving rise to the tort claims to

26   DeviceBits.  Docket No. 29 at 20-21.  The same specific jurisdictional principles that applied to

27   Defendant Ramey above applies to Defendant DeviceBits, except that the "purposeful direction"

28   analysis governs the imputed tort claims, *see Picot*, 780 F.3d at 1212 ("For claims sounding in

8

**United States District Court**
For the Northern District of California

1   tort, we . . . apply a "purposeful direction" test . . . .").

2           a.      <u>First Prong:  Purposeful Direction</u>

3         The Ninth Circuit normally employs the so-called "effects" test in purposeful direction

4   cases, which imposes three requirements: "the defendant allegedly [must] have (1) committed an

5   intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows

6   is likely to be suffered in the forum state."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

7   797, 803 (9th Cir. 2004) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

8         Here, Ramey acted intentionally when he allegedly orchestrated the transfer of

9   approximately $2 million in business away from his employer to DeviceBits.  *See GT Sec., Inc. v.*

10  *Klastech GmbH*, 2014 WL 2928013, at *13 (N.D. Cal. June 27, 2014) ("The first prong of

11  purposeful direction is easily satisfied and generally glossed over by the courts.").  Ramey's

12  actions were also expressly aimed at this District because he allegedly reached out to and deceived

13  Dynatrace's personnel in this District by emailing them and asked them in District to amend a

14  contract with Customer to effect transferring business to DeviceBits.  *See* Docket No. 1

15  (Complaint) at ¶¶ 21-23; Docket No. 30 (Declaration of Rachel Obstler) at ¶¶ 8-11, Exs. A-D.

16  Ramey chose to associate with Dynatrace and its predecessors, which Ramey knew were based

17  and had substantial operations in this District.  *See* Docket No. 1 (Complaint) at ¶¶ 5, 13-14.

18  Ramey also caused harm that he knew is likely to be suffered in this District.  Ramey allegedly

19  knew that Dynatrace's work for Customer was staffed with Dynatrace employees in this District.

20  *See* Docket No. 30 (Declaration of Rachel Obstler) at ¶¶ 3-4; Docket No. 29 at 15.  Ramey's acts

21  caused economic injury, which, according to Dynatrace, reduced its revenues and led it to layoffs

22  in this District.  Docket No. 30 (Declaration of Rachel Obstler) at ¶ 4.

23        Ramey's acts described above are imputed to Dynatrace.  "For purposes of personal

24  jurisdiction, the actions of the agent are attributable to the principal."  *Sher*, 911 F.2d at 1362.

25  Under California law, "[a]n agent is one who acts on the principal's behalf and subject to the

26  principal's control."  *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir.2010) (applying

27  California agency law); *see also* Restatement (Third) Agency § 1.01.  Here, Ramey allegedly stole

28  business from Dynatrace on behalf of DeviceBits and was under the control of DeviceBits as its

United States District Court
For the Northern District of California

"founding officer," Docket No. 1 (Complaint) at ¶ 7, and "Chief Executive Officer," *id.* at ¶ 24.

Moreover, "[u]nder the doctrine of in pari delicto, the acts of a corporation's agents taken at the behest of the corporation's sole shareholder [*i.e.*, sole owner] are imputed to the corporation," even when "the acts could be considered adverse to the corporation," *In re Crown Vantage, Inc.*, 2004 WL 1635543, at *4 (N.D. Cal. July 12, 2004), and "[c]ourts do not differentiate LLCs from more traditional corporations in this context," *In re California TD Investments LLC*, 489 B.R. 124, 129 (Bankr. C.D. Cal. 2013).  Here, although Ramey hired employees, Docket No. 29 at 1, including Chris Callahan, Docket No. 34 (Declaration of Chris Callahan) at ¶ 4, to manage DeviceBits, Ramey was the sole member, *i.e.*, sole owner of the limited liability company.  Thus, the actions Ramey took as the sole owner of DeviceBits are imputed to DeviceBits.

> b.      Second Prong:  Relation to Forum

The second prong of specific jurisdiction is satisfied because Dynatrace's tort claims against DeviceBits would not have arisen but for the imputed acts.

> c.      Third Prong:  Reasonableness of Jurisdiction

The third prong is also satisfied.  It is reasonable for the Court to exercise jurisdiction over DeviceBits as well as Ramey because Ramey acted on behalf of and for the benefit of DeviceBits.

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue.

This order disposes of Docket No. 24.


**IT IS SO ORDERED**.


Dated: December 8, 2016

_____
EDWARD M. CHEN
United States District Judge